## 77518. TOLLETT v. GREEN TREE ACCEPTANCE, INC.
### (379 SE2d 2)

BIRDSONG, Judge.

Appellant Linda D. Tollett filed a complaint on June 24, 1987, against appellee Green Tree Acceptance, Inc. (GTA) to recover the penalty imposed by OCGA § 10-1-38 for wilful violation of the Georgia Motor Vehicle Sales Finance Act (OCGA § 10-1-33 et seq.), alleging that GTA charged more than the maximum amount allowed by OCGA § 10-1-33 (a) in financing her purchase of a mobile home. GTA denied any liability under the Act and moved for summary judgment on the basis of uncontroverted evidence that it was neither the original seller nor the current holder of appellant's financing contract. This appeal is from the grant of summary judgment to GTA. *Held*:

The undisputed facts show that Ms. Tollett entered into a retail installment contract with Landmark Mobile Homes on May 17, 1982 for the purchase of a new mobile home. Landmark assigned this contract to GTA on May 21, 1982, and on July 1, 1982, prior to any payments by Ms. Tollett, GTA reassigned her contract to the Government National Mortgage Association (GNMA). GNMA is a federally created corporation operated by the Department of Housing and Urban Development to purchase federally insured loans and guarantee securities backed by those loans. On May 20, 1982, GTA and GNMA had entered into an agreement whereby GNMA was to purchase and guaranty no more than $1 million principal amount of mobile home loans from GTA.

GTA assigned to GNMA "all rights, title and interest in and to the [Linda D. Tollett] Security Agreement-Retail Installment Sale Contract, the amounts payable thereunder, the property above-described, and the right therefrom ensuing, and also the right to apply for a certificate or duplicate certificate of title, and to register and/or transfer title in the above-described mobile home. . . ." This assignment and sales contract were then delivered to GNMA's custodial bank under a custodial agreement by which the bank was required to "segregate and maintain continuous custody and control of all documents deposited with it on behalf of GNMA until the obligations are

paid in full. . . ." On July 1, 1982, GTA further contracted with GNMA to service the installment contracts assigned to it in the same pool with Ms. Tollett's contract. GTA agreed to collect payments for GNMA and set up a custodial escrow account for distribution to the certificate holders, GTA to receive a percentage of the amounts collected.

OCGA § 10-1-38 (b) provides that a violation of the finance charge limitations imposed by OCGA § 10-1-33 "by the *seller* or *holder* shall bar recovery of any finance charge, delinquency, or collection charge on the contract." (Emphasis supplied.) The trial court found that GTA was not the seller of the mobile home to Ms. Tollett; and that the evidence showed at most that it was only the temporary holder of the assignment of her retail sales contract prior to reassignment of all financial interests to GNMA, after which it acted solely as a collection-service agent. We agree.

OCGA § 10-1-31 (3) defines a "holder" of a retail installment contract as "the retail seller of the motor vehicle under the contract or, if the contract is purchased by a sales finance company or another assignee, the sales finance company or other assignee *at the time of the determination*." (Emphasis supplied.) At the time of determination of the holder subject to forfeiture of the finance charges as contemplated by this Act, GNMA was, and at all times since July 1, 1982 has been, the "other assignee" of Ms. Tollett's sales contract. Likewise, under the Uniform Commercial Code, a " '[h]older' means a person who is in possession of a document of title or an instrument or an investment security drawn, issued, or indorsed to him or to his order or to bearer or in blank." OCGA § 11-1-201 (20). At the time this action was filed, GNMA's custodial bank was in possession of all pertinent documents on its behalf. See *Krapf v. Wiles*, 252 Ga. 452 (314 SE2d 656).

Appellant's conclusory argument that GTA "continued to exercise all the overt rights of a holder" equivocates the facts that GTA assigned all its interest in her contract to GNMA, and the right to pursue a deficiency belongs solely to the federal government; GTA was not a party to the financing contract, nor has it sought to enforce it. Likewise, appellant's position that OCGA § 10-1-38 (c) imposes penalties for wilful violation of the Act by any person, regardless of whether it is a holder or seller, is not persuasive. It is clear that, in pari materia with OCGA § 10-1-33, the language "any person" and "the person committing the violation" found in OCGA § 10-1-38 (a) and (c) refers only to a seller or holder, and was not intended to expand the class of persons liable for usury violations. This is emphasized by subsection (d), which provides that if a violation is corrected within ten days after execution of the contract, "neither the seller nor the holder is subject to any penalty under this Code section." Finally,

contrary to appellant's assertion, nothing stated by this court in *Gibbs v. Green Tree Acceptance*, 188 Ga. App. 633 (2) (373 SE2d 637) supports a finding that GTA should be treated as a holder in the instant case. It follows that the trial court properly granted summary judgment to GTA.

*Judgment affirmed. Banke, P. J., and Pope, J., concur. Beasley, J., disqualified.*

DECIDED JANUARY 31, 1989 —
REHEARING DENIED FEBRUARY 14, 1989 — 

*King, Morriss, Talansky & Witcher, Joseph H. King, Jr.,* for appellant.

*King & Spalding, Gary J. Toman, Walter Driver, Byron Attridge,* for appellee.